UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | Case No.: 1:20-CR-00063-MSM-PAS |
| | : | |
| DAMIR SISIC | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Damir Sisic by and through counsel, submits this memorandum to aid the Court with imposing a sentence in this case that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553 (a). For the reasons below, Mr. Sisic recommends to the Court a sentence of supervised release and a fine.

## I. FACTS AND PROCEDURAL HISTORY

Mr. Sisic was charged by way of a criminal information on August 12, 2020 with Conspiracy to Falsify Records in violation of 18 U.S.C. §§ 1519 and 371.[1] The filing of this pleading was the product of ongoing negotiations between the government and the defense, to include a meeting between the parties. Mr. Sisic learned he was under investigation, retained counsel, and began cooperating with the government's efforts to prosecute him. As such, he voluntarily waived his right to indictment and agreed to the filing of the criminal information. He contemporaneously also entered into a plea agreement with the government.

Mr. Sisic remotely appeared before the Court for arraignment on August 24, 2020 and was released on $10,000 unsecured bond with conditions.[2] He remotely participated in a Pretrial Services interview beforehand, which led to his release. After arraignment, Mr. Sisic voluntarily self-reported to the U.S. Marshal's office without incident to be processed. He next appeared before the Court

---
[1] PSR, ¶.1.
[2] PSR, ¶.2.

remotely for a change of plea hearing on October 14, 2020. The Court accepted his plea and adjudged him guilty. Mr. Sisic is currently scheduled for sentencing on January 25, 2021.[3]

## II. <u>OBJECTION TO THE PRESENTENCE REPORT</u>

U.S. Probation issued its final presentence report (PSR) related to this case on December 18, 2020. The Defense filed no objections to the final PSR. Based upon Mr. Sisic's criminal history category of I[4] and an adjusted offense level of 15[5], his advisory sentencing guidelines range is 18 to 24 months.[6] The Defense does not object to this guideline calculation.

Though this calculation is not contested, the Defense admittedly failed to file an important objection to the PSR. In accordance with Federal Rule of Criminal Procedure 32 (i)(1)(D), the Court may, for good cause, allow a defendant to make a new objection to the PSR before sentence is imposed. The Defense overlooked paragraph 71 (a) of the PSR, which cites U.S.S.G. § 5K2.0 (a)(2)(B) as grounds for a possible upward departure. Mr. Sisic, through counsel, now seeks to note his objection to this PSR paragraph, along with his supporting arguments against imposing an upward departure in this case.

U.S.S.G. § 5K2.0 (a)(2)(B) allows for upward departures from the applicable guidelines range "based on circumstances of a kind not adequately taken into consideration" by the Sentencing Commission and other guidelines provisions. The commentary to this provision provides that "[s]ubsection (a)(2) authorizes the court to depart if there exists an aggravating or a mitigating circumstance in a case under 18 U.S.C. § 3553(b)(1), or an aggravating circumstance in a case under 18 U.S.C. § 3553 (b)(2)(A)(i), of a kind not adequately taken into consideration in the guidelines." U.S.S.G. § 5K2.0 (a)(2)(B) n. 3 (A). However, it is expected that departures based on such

---

[3] PSR, ¶.3.
[4] PSR, ¶.33.
[5] PSR, ¶.30.
[6] PSR, ¶.58.

unidentified circumstances will occur rarely and only in exceptional cases. U.S.S.G. § 5K2.0 (a)(2)(B) n. 3 (A)(ii) (emphasis added). Mr. Sisic contends that this case does not present rare and exceptional circumstances to warrant this upward departure.

Paragraph 71 (a) of the PSR cites, as grounds for this potential departure, that Mr. Sisic's former employee and "truck driver C.H. died while operating a STS truck, under conditions contrary to safety regulations outlined by the U.S. Department of Transportation, Federal Motor Carrier Safety Administration (FMCSA)." Mr. Sisic's offense conduct consisted of conspiring with his drivers to falsify their logbooks. However, there is absolutely no evidentiary connection between Mr. Sisic's actions and C.H.'s tragic death.

First, in its written submission, "the United States is not alleging that driver fatigue [or Mr. Sisic's actions of falsifying logbooks] caused the accident."[7] The government holds most of the evidentiary cards in this case. Mr. Sisic reached a plea agreement before any charging documents were filed. Accordingly, no formal discovery was ever conducted. If the government had evidence to conclude that Mr. Sisic's actions in any way caused or contributed to this tragic accident, it would most certainly not take the opposite position, and instead, advocate for consideration of the accident as an aggravating circumstance regarding the offense conduct. Since the government, which maintains knowledge superiority regarding this case, does not advocate for an upward departure based on the fatal accident, the Court should disregard Probation's recommendation set forth in paragraph 71 (a) of the PSR.

Upon realizing Probation's PSR recommendation with respect to U.S.S.G. § 5K2.0 (a)(2)(B), the Defense successfully sought a continuance of the January 7, 2021 sentencing date in order to

---

[7] Document 15, p.5.

conduct discovery on this narrow issue. The government provided the Defense with the evidence in its possession related to the accident. The following is a summary of what was disclosed.

C.H. suffered from a number of medical issues that rendered him unfit to operate a commercial motor vehicle. According to CFR § 391.41, drivers are required to meet physical qualifications. For instance, "[a] person is physically qualified to drive a commercial motor vehicle if that person…has no loss of a foot, a leg, a hand, or an arm, or has been granted a skill performance evaluation." CFR § 391.41 (b)(1). Medical records for C.H., as produced by the government establish that he had a prosthetic leg, and there is no evidence he was granted a performance evaluation. Mr. Sisic was unaware of this physical disability until after the accident. He learned of it during the subsequent investigation. He was surprised by this discovery and perplexed as to how C.H. ever received a medical card clearing him to drive.

Drivers are also disqualified from operating commercial motor vehicles if they have a history of diabetes (CFR § 391.41 (b)(3)), cardiovascular disease ) CFR § 391.41 (b)(4)), or any medical history of a condition likely to cause loss of consciousness CFR § 391.41 (b)(8)). In addition to failing to disclose his prosthetic limb, C.H. also concealed from healthcare providers that he suffered from diabetes and a heart condition. More importantly, he failed to disclose that he suffered from both a heart attack and loss of consciousness in 2016. He concealed these facts in order obtain a medical card, which is necessary to drive. Mr. Sisic would not have hired C.H. if he had known of his underlying medical conditions.

In addition, the evidence revealed by the government establishes that C.H. may have had a substance abuse problem. Text messages between C.H. and his significant other included discussions about tramadol, a reference to a crackhead, and the numbers "10" and "7" apparently referring to a quantity of drugs that he sought to purchase. Further, the text messages demonstrate that C.H. was

also experiencing suicidal ideations. This information is all offered to the Court to demonstrate that something other than Mr. Sisic's offense conduct caused the fatal accident.

The following is a timeline leading up to C.H.'s death. The day log lists the driver's activities over the last 24 hours. "All start times reflect the time zone of the driver's home terminal."[8] At the time of existence of Sisic Transportation, the company based its logs off of Eastern Standard Time. C.H.'s fatal accident occurred in Oklahoma, which is in Central Standard Time. Both are included for reference.

| Date | Time EST | Time CST | Driver Status | Location | Notes |
|---|---|---|---|---|---|
| 4/21/18 | 20:09:00 | 19:09:00 | Sleeper 3hr 51min | 2 Miles NW of Ardmore, OK (Truck Stop) | Arrives at Truck Stop |
| 4/22/18 | 00:00:00 | 23:00:00 | Sleeper 6hr 12min | 2 Miles NW of Ardmore, OK (Truck Stop) | Total of 10 hours 4 mins of "sleeper" time |
| 4/22/18 | 06:12:00 | 05:12:00 | On-Duty 23mins | 2 Miles NW of Ardmore, OK (Truck Stop) | Possibly to fuel up a inspect truck |
| 4/22/18 | 06:35:00 | 05:35:00 | Off-Duty 12mins | 2 Miles NW of Ardmore, OK (Truck Stop) | Possibly for breakfast before beginning road trip |
| 4/22/18 | 06:48:00 | 05:48:00 | Driving 11mins | 2 Miles NW of Ardmore, OK (Truck Stop) | Left Truck Stop/ system switched into driving mode auto |
| 4/22/18 | 06:59:30 | 05:59:30 | On-Duty Crash | 2 Miles NW of Ardmore, OK (Truck Stop) | 911 Call - 6:15am CST |

---

[8] See https://customer.omnitracs.com/training/docs/hos/doc_drv_qrc_ivg_hos_dot_d.pdf

CH put his status into Off-Duty at 5:35 AM CST most likely to go into the truck stop for coffee and/or food before embarking on his trip. At 5:48 AM CST, the duty status changed to reflect he was driving. Within minutes, the accident occurred.

Oklahoma State Police investigated the incident. When authorities asked Mr. Sisic to produce the driver's logbook from that day, he complied immediately. The investigator noted in his report that he did not believe Mr. Sisic falsified the logbook. The investigator further concluded that the STS truck was not defective in any way. The engine had been rebuilt and both the trailer and its parts were essentially brand new. There was no evidence that C.H. even applied the truck's breaks before the accident, leading the investigator to opine that he was unconscious at the time of impact. The trooper's cited bases for unconsciousness were either sleeping or an underlying medical condition. Since C.H. had been on break for more than 10 hours before commencing this trip and suffered from a number of previously undisclosed conditions (medical, psychological, and substance abuse), it is unlikely he fell asleep. It is certain that whatever the cause of this fatality, there was no nexus between the accident and Mr. Sisic's offense conduct. For these collective reasons, the Defense respectfully suggests that an upward departure is not warranted.

### III. SENTENCING FACTORS AND CONSIDERATIONS

The District Court is required to fashion a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of 18 U.S.C. § 3553 (a). *United States v. Booker*, 543 U.S. 220 (2005). Sentencing should begin with a calculation of the applicable sentencing guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)). The guidelines calculation is a starting point and initial benchmark for the Court to consider, however, it is not the only sentencing consideration. *Id.*

A Court may not presume the guidelines range is reasonable but must make an individualized assessment of each defendant based upon the facts presented in each case. *Gall,* 128 S. Ct. at 597. After both parties are afforded an opportunity to argue for whatever sentence they deem appropriate, the Court must then consider the factors[9] of 18 U.S.C. § 3553 (a) to determine the most appropriate sentence in the instant case. *Id*. As such, Mr. Sisic asks the Court to impose a sentence of supervised release and a fine. Before deciding upon the reasonableness of this sentencing request, he asks the Court to consider the following.

1. **Pre-Charging Conduct**

Mr. Sisic learned he was under criminal investigation in approximately January 2020. He retained counsel, initiated contact with the government, and began negotiations to resolve the matter. He made no effort to flee, obstruct justice, or minimize his misconduct. By summer, the parties reached an agreement regarding the filing of a criminal information and a plea agreement calling for Mr. Sisic's acceptance of responsibility. Once the charge was filed, he voluntarily participated in his pretrial services interview and surrendered to the U.S. Marshals to be processed. This is indicative of his respect for the law, quick acceptance of responsibility, and rehabilitative potential.

---

[9]To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider the following:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed:
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    (3) the kinds of sentences available;
    (4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
    (5) any pertinent policy statement issued by the Sentencing Commission;
    (6) the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and
    (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553 (a).

## 2. Post-Charging Conduct

Once arraigned in August 2020, Mr. Sisic was released on bail with conditions. The government attempted to persuade U.S. Magistrate Sullivan that as a condition of release, Mr. Sisic not be allowed to serve as a truck driver for his brother who now owns and operates his own trucking company after STS went out of business. Magistrate Sullivan rejected the government's request, thereby permitting Mr. Sisic to work in this capacity on the condition that he produce monthly documentation to the government and Probation establishing his compliance with DOT regulations regarding commercial truck driving time restrictions. He has remained fully compliant with this condition since September 2020. For this reason, the Court should reject the government's renewed request as a condition of supervised release that Mr. Sisic be precluded from continuously working in this capacity.[10] Further, the plea agreement calls for a fine of $50,000.00 to be imposed against Mr. Sisic. Working with and for his brother, in his existing capacity, affords him the best chance of being able to pay this hefty sum in a reasonable period of time.

In sum, Mr. Sisic has remained fully compliant with all conditions of his release, further evidencing his respect for both the law and orders of this Court, as well as his rehabilitation and candidacy for success while on supervised release. He asks the Court to take this into consideration when adjudging sentence.

## 3. History and Characteristics of the Defendant

### A. Family

Damir Sisic is age 30, is not married and has no children.[11] He resides with his parents and brother in Woonsocket, Rhode Island. The family formerly lived in Doboj, Bosnia until 2000, when they relocated to the United States as refugees of the Bosnian War. They settled in and continue to

---

[10] Document 15, p.9, n.2.
[11] PSR, ¶.39.

reside in Woonsocket, RI.[12] Mr. Sisic's father, Jasmin, is age 60 and works at Cumberland Foundry. He also works part-time as a loader for UPS. Mr. Sisic's mother, Akifa, is age 61 and works cleaning local office buildings. Mr. Sisic's only sibling and brother, Omer Sisic, is age 26 owns a long-haul trucking company for which Damir now works.[13] Mr. Sisic's family, though disappointed by Mr. Sisic's legal troubles, continue to fully support him during this difficult time. If sentenced to supervised release, Mr. Sisic will continue to live at home and work for his brother.

B. **Immigration**

Mr. Sisic and his family left Bosnia and entered the United States on April 3, 2000. He became a naturalized U.S. Citizen on March 5, 2010.[14]

C. **Growing up During War**

Mr. Sisic grew up in Bosnia during a time of war. While living in Bosnia, Mr. Sisic's family struggled financially, at times going without food or having very little to eat. He and his family experienced the devastation of war, to include bombs exploding nearby, his father fighting on the frontlines, and knowing of concentration camps close to their village, and observing the horrors and atrocities that occurred there.[15] Notwithstanding these extreme challenges, Mr. Sisic has adjusted well to living in the United States. By all accounts, he is affable, hardworking, kind-hearted, family-oriented, and not inhibited by the adversity he faced during his childhood.

D. **Education and Work History**

Mr. Sisic graduated from Woonsocket High School in 2008. Thereafter, he attended Rhode Island College where he earned his Bachelor of Science Degree in Business Management in 2012. Mr. Sisic continued in school and is a few credits short of a Master's Degree. Mr. Sisic also obtained

---

[12] PSR, ¶.40.
[13] PSR, ¶.37.
[14] PSR, ¶.54.
[15] PSR, ¶.38.

a Commercial Drive License (CDL) in 2014 from New England Tractor Trailer Training School (NETTS) in Pawtucket, RI.[16] He is also fluent in the English and Bosnian languages.

Mr. Sisic has worked as a truck driver for his brother's trucking company, Bosnia Express, LLC since July 2019. Mr. Sisic is compensated very little, as his labor is repaying a large debt to his brother for a substantial investment that Omer made in Damir's former trucking company, STS, that stopped operating.[17] Between 2015 and 2019, Mr. Sisic owned and operated Sisic STS Transport, a long-haul commercial trucking company. Mr. Sisic invested everything he earned into this business.[18] Between 2014 and 2015, he also worked for Maine Oxy, in Waterford, CT. Though he has other work experience, most of his career has been spent as a commercial truck driver. This is the field he hopes to remain working in, and specifically, with his brother.

### 4. Mr. Sisic Poses No Danger or Threat to the Community

Mr. Sisic does not pose a danger or threat to the community. While the defense in no way seeks or attempts to minimize the seriousness of the charged misconduct, Mr. Sisic is not charged with a violent offense. While his offense conduct posed threats to public safety, Mr. Sisic has learned invaluable lessons from this overall experience with the criminal justice system. He has done well on pretrial release, and according to his monthly reports, is in compliance with DOT driving time regulations. He now, unfortunately, is a convicted felon who is capable of full rehabilitation, as demonstrated by his pre- and post-charging conduct.

---

[16] PSR, ¶.47.
[17] PSR, ¶.49.
[18] PSR, ¶.50.

10

**5. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense</u>**

The Defense concedes that punishment for his actions is certainly warranted. His applicable U.S.S.G. range is 18 to 24 months.[19] However, a jail sentence is not required for Mr. Sisic, or needed for all defendants to achieve the sentencing objectives of 18 U.S.C. § 3553. It should be highlighted that Mr. Sisic has no criminal record. For someone like this Defendant, who has no arrest record or prior experience with criminal justice, a felony conviction, a period of supervised release, and imposition of a fine are sufficient, but not greater than necessary to tailor an appropriate sentence for Mr. Sisic and his admitted offense conduct.

The government advocates for a fine of $50,000.00, which is called for in the parties' plea agreement, and a period of incarceration for 18 months. The government's sentencing memorandum cites a few cases with similar fact patterns in support of its jail request. In *United States v Johansson*, 249 F.3d 848 (5th Cir. 2001), though the defendant received a prison sentence of 15 months, no fine was imposed. In *United States v. Nijjar*, Cr. No. 04-5356 (E.D. Cal. June 5, 2008), the defendant received a prison sentence of 12 months and a $5000.00 fine, which represents 10% of the fine sought by the government. In *United States v. Szteborokski*, Case No. 3:11CR236 (D. Conn. February 2014), the defendant received a prison sentence of 14 months and a $20,000.00 fine, which represents 40% of the sought-after fine from Mr. Sisic. When considering this small sampling of cases and the heavy $50,000.00 fine to be imposed against Mr. Sisic, the Defense respectfully suggests that a term of incarceration is not warranted.

To the extent the Court believes that some restriction on liberties is necessary to punish Mr. Sisic, the Defense asks the Court to consider the alternative of home detention, but permit Mr. Sisic to leave the house to work and drive for his brother. After all, maintaining employment with and

---

[19] PSR, ¶.58.

good relations with his brother will be integral to his ability to ultimately pay his financial debt to the Court in a reasonable time. Mr. Sisic is already working off a debt owed to his brother Omer. His brother has offered to increase the debt by assisting Mr. Sisic to pay the anticipated fine, in consideration for his continued efforts driving for him and for his company.

## IV. ATTACHMENTS

A. Statements of Support;

B. Resume;

C. Education;

D. Certificates; and

E. Photographs.

## V. SPECIAL REQUESTS

If the court deems incarceration necessary, Mr. Sisic asks the Court to recommend to the Bureau of Prisons (BOP) that he be allowed to serve his jail sentence as close to Rhode Island as possible so as to facilitate visitation from his family members. Devens is recommended as a specific BOP facility, should any term of incarceration be imposed.

## VI. CONCLUSION

Based upon the foregoing, Mr. Sisic respectfully asks the Court to impose a sentence of supervised release and a $50,000.00 fine.

Respectfully submitted on this 25th day of January 2021.

> Respectfully Submitted
> Defendant,
> Damir Sisic
> By his Counsel
>
> /s/ John L. Calcagni III, Esq.
> John L. Calcagni III (# 6809)
> Law Office of John L. Calcagni III, Inc.
> One Custom House Street, Third Floor
> Providence, RI 02903
> Phone: (401) 351.5100
> Fax: (401) 351.5101
> Email: jc@calcagnilaw.com

## **CERTIFICATION**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on January 25, 2020.

> /s/ John L. Calcagni III, Esq.
> John L. Calcagni III (# 6809)
> Law Office of John L. Calcagni III, Inc.
> One Custom House Street, Third Floor
> Providence, RI 02903
> Phone: (401) 351.5100
> Fax: (401) 351.5101
> Email: jc@calcagnilaw.com